UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA,

                    Plaintiff,

        vs.                          Case No. 16-CR-103-JDP-1

PATRICK S. SWEENEY,                  Madison, Wisconsin
                                     July 21, 2017
                    Defendant.       1:00 p.m.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

            STENOGRAPHIC TRANSCRIPT OF PLEA HEARING
            HELD BEFORE CHIEF JUDGE JAMES D. PETERSON

APPEARANCES:

For the Plaintiff:
        Office of the United States Attorney
        BY:  MEREDITH P. DUCHEMIN
             AARON WEGNER
        Assistant United States Attorneys
        222 West Washington Avenue, Suite 700
        Madison, Wisconsin  53703

For the Defendant:
        Christopher T. Van Wagner
        BY:  CHRISTOPHER T. VAN WAGNER
        110 East Main Street, Suite 705
        Madison, Wisconsin  53703

Also Present:
        Patrick S. Sweeney, Defendant
        Marc Stieve, U.S. Probation Officer


            CHERYL A. SEEMAN, RMR, CRR
               Official Court Reporter
            United States District Court
            120 North Henry Street, Room 410
             Madison, Wisconsin  53703
                  1-608-261-5708

1        (Called to order at 1 p.m.)

2        THE CLERK:  Case No. 16-CR-103-JDP-1, *United*

3   *States of America v. Patrick S. Sweeney.*  Court is called

4   for a plea hearing.  May we have the appearances, please?

5        MS. DUCHEMIN:  Good afternoon, Your Honor.

6   Meredith Duchemin and Aaron Wegner on behalf of the United

7   States.

8        THE COURT:  Ms. Duchemin and Mr. Aaron Wegner,

9   good afternoon.

10        MR. VAN WAGNER:  Your Honor, Chris Van Wagner

11   appearing in person with Patrick Sweeney.

12        THE COURT:  Mr. Sweeney, Mr. Van Wagner, good

13   afternoon to you.

14        MR. VAN WAGNER:  Good afternoon.  Thank You.

15        THE COURT:  We are here for a plea hearing based

16   on a written plea agreement that was signed I think

17   yesterday and it has been provided to the Court.

18      Mr. Van Wagner, have you and Mr. Sweeney received a

19   copy of the superseding indictment?

20        MR. VAN WAGNER:  We have, Your Honor.

21        THE COURT:  Would you like it read?

22        MR. VAN WAGNER:  We would waive a formal reading

23   of it.

24        THE COURT:  All right.  Very good.  Let me ask

25   Ms. Duchemin and Mr. Wegner to tell me the penalties that

1  Mr. Sweeney would face if he were convicted.

2           MS. DUCHEMIN:  Yes, Your Honor.  I believe

3  Mr. Sweeney is prepared to enter a guilty plea to Count 2

4  of the superseding indictment.  That count charges a

5  violation of Title 18, United States Code, Section 152

6  (3).  The maximum penalties for that offense are five

7  years in prison, a $250,000 fine, three-year period of

8  supervised release, a $100 criminal assessment penalty,

9  plus the possibility of restitution.

10          THE COURT:  Okay.  And do we have an idea what

11  the restitution amount is going to be?

12          MS. DUCHEMIN:  No, Your Honor.

13          THE COURT:  Okay.  All right.  So,

14  Mr. Van Wagner, have you had enough time to talk with

15  Mr. Sweeney about the charges he faces, the penalties that

16  might result, and whether he has any defenses?

17          MR. VAN WAGNER:  Yes, I have.

18          THE COURT:  Very good.  Mr. Sweeney, my

19  understanding is you want to enter a plea today.  Is that

20  right?

21          THE DEFENDANT:  That's correct, Your Honor.

22          THE COURT:  All right.  Before you do that, the

23  purpose of our hearing is to make sure that you're capable

24  of proceeding today and that your entry of a plea is

25  actually fully voluntary, that it's done understanding the

1   charges and the penalties involved, and also that there's

2   a factual basis for the plea, which means that there's

3   reason for me to believe that you're actually guilty

4   before I let you plead guilty.

5       So I'm going to have to ask you some questions that

6   you'll have to answer under oath.  So I'm going to ask you

7   to stand up, raise your right hand, and the clerk is going

8   to swear you to tell the truth.

9           **PATRICK S. SWEENEY, DEFENDANT, SWORN**

10          THE COURT:  All right.  Very good.  Okay.  My

11  first few questions are to make sure that your plea is

12  voluntary and that you're capable of proceeding today.

13  Let's begin by having you tell me how old you are.

14          THE DEFENDANT:  I'm 62, Your Honor.

15          THE COURT:  62.  And tell me how much formal

16  education you've had.

17          THE DEFENDANT:  I have a four-year college

18  undergraduate degree, a three-year law degree, and a

19  one-year degree at an LOM program.

20          THE COURT:  Okay.  This may seem like a formality

21  to ask you this, but do you think you were able to read

22  and understand the plea agreement before you signed it?

23          THE DEFENDANT:  I do, Your Honor.

24          THE COURT:  All right.  Very good.  Let's find

25  out if there's any reason that you might have trouble

1  participating today.  Are you suffering from any physical

2  or mental illness?

3          THE DEFENDANT:  Not that would effect anything I

4  would say here, Your Honor.

5          THE COURT:  Okay.  Well, let's just break it down

6  a little bit.  Are you suffering from any mental illness?

7          THE DEFENDANT:  I have a mental health condition

8  diagnosed.

9          THE COURT:  Okay.  Let's talk a little -- we

10 don't need to go into great detail, but I looked at the

11 preservices report.  I believe that you have some issues

12 with depression and anxiety.  Is that right?

13         THE DEFENDANT:  Correct.

14         THE COURT:  Okay.  Are you on any medication for

15 those?

16         THE DEFENDANT:  I am.

17         THE COURT:  Okay.  Would those medications

18 interfere with your ability to understand what people tell

19 you --

20         THE DEFENDANT:  No, sir.

21         THE COURT:  -- or your ability to make good

22 decisions?

23         THE DEFENDANT:  No, Your Honor.

24         THE COURT:  Okay.  Let's deal with the physical

25 issues that you might have.  Are you suffering from any

1    physical conditions?

2              THE DEFENDANT:  Diabetes 2.

3              THE COURT:  Okay.  And do you take medication for

4    that?

5              THE DEFENDANT:  I do, Your Honor.

6              THE COURT:  Okay.  And does that medication

7    interfere with your ability to understand what people tell

8    you or your ability to make good decisions?

9              THE DEFENDANT:  It does not.

10             THE COURT:  Very good.  All right.  Are you

11   addicted to drugs or alcohol?

12             THE DEFENDANT:  I am not.

13             THE COURT:  Okay.  Are you so tired that you

14   wouldn't be able to follow what we're doing today?

15             THE DEFENDANT:  I am not.

16             THE COURT:  All right.  Fine.  And are you under

17   the influence of any drugs or alcohol today other than the

18   medications that we discussed?

19             THE DEFENDANT:  I am not.

20             THE COURT:  Good.  All right.  Mr. Sweeney, do

21   you think that you've had enough time to talk with

22   Mr. Van Wagner about the nature of the charges that you

23   face?

24             THE DEFENDANT:  Yes, I do.

25             THE COURT:  Okay.  And have you talked about the

```
 1  facts that the government thinks it could prove if this
 2  case were to go to trial?
 3              THE DEFENDANT:  Yes, Your Honor.
 4              THE COURT:  And have you talked about whether you
 5  have any defenses to the charges?
 6              THE DEFENDANT:  Yes, Your Honor.
 7              THE COURT:  Finally, have you talked about the
 8  United States sentencing guidelines and how they might
 9  affect the sentence you might receive?
10              THE DEFENDANT:  Yes.
11              THE COURT:  Good.  If you would just tell me, in
12  your own words, what you think you're being charged with.
13              THE DEFENDANT:  Count 2 is a bankruptcy fraud,
14  which has the elements of something like I was involved
15  and filed a Chapter 11 in the Western District of
16  Wisconsin.  As a result of that, I submitted papers that
17  listed all of my debts and what kind of debts they were.
18  It said other things, but it certainly said those.  And I
19  put down the loans to the partnerships that I was the
20  manager of as loans, but I understand that there was
21  evidence that will be submitted and it will be sufficient
22  to say that I should have put something else like
23  *embezzlement* on those.
24              THE COURT:  All right.  All right.  At this
25  point -- we're going to revisit that in a few minutes --
```

1  but at this point you're satisfied that you understand the

2  charges that you're facing.  Let me make sure that you

3  understand the penalties.  You understand if I accept your

4  plea and adjudge you guilty, you could be subject to the

5  penalties up to the maximum that Ms. Duchemin reviewed?

6  And that means that you could be subject to a term of

7  imprisonment up to five years; do you understand that?

8           THE DEFENDANT:  Yes, I do, Your Honor.

9           THE COURT:  And you're subject to a fine of up to

10 $250,000?

11          THE DEFENDANT:  I understand that as well.

12          THE COURT:  Okay.  You will face a mandatory $100

13 criminal assessment penalty?

14          THE DEFENDANT:  Yes, I'm aware of that.

15          THE COURT:  Any period of incarceration could be

16 followed by a period of supervised release of up to three

17 years.

18          THE DEFENDANT:  I understand that as well.

19          THE COURT:  And that period of supervised release

20 would be subject to certain conditions and restrictions

21 that I would impose.  And if you violated any of those

22 conditions or restrictions, you can be sent back to prison

23 for violating them; do you understand that?

24          THE DEFENDANT:  I sure do, yes.

25          THE COURT:  Also, this is a case in which there

1  is a victim who suffered a financial loss and so you will

2  be subject to an order of restitution; do you understand

3  that?

4          THE DEFENDANT:  There's a possibility of that.

5          THE COURT:  Yes.

6          THE DEFENDANT:  I do understand.

7          THE COURT:  Okay.  And I guess we don't know what

8  that restitution amount is yet, but you will either agree

9  on it with the government before your sentencing, and if

10  you don't agree, I'll decide what the restitution amount

11  should be.  And that might well involve having a hearing

12  and taking some evidence and I'll settle on the

13  restitution amount, and then that will be part of the

14  judgment against you in this case as well; do you

15  understand that?

16          THE DEFENDANT:  I do understand.

17          THE COURT:  Very good.  All right.  Let's talk

18  about the federal sentencing guidelines here.  We've got

19  Mr. Stieve in the courtroom here from the probation

20  office.  And he's going to conduct an investigation and

21  he'll compile information and present it to me in a

22  presentence report that I will use in setting your

23  sentence.

24      One of the things that the presentence report will do

25  is it will calculate the sentencing range that's

1  recommended under the United States sentencing guidelines.

2  And at this point I want to review some of the factors

3  that go into the calculation of that guideline sentencing

4  range.

5       So you understand that the starting point for the

6  guidelines will be the offense level that the guidelines

7  assign to the crime that you're thinking about pleading

8  guilty to.  Do you understand that the guidelines offense

9  levels --

10       THE DEFENDANT:  Yes, and there's different

11  levels; I understand that.

12       THE COURT:  And then other conduct relevant to

13  your crime.  And in a financial crime, the most

14  significant part of the other conduct is not the only

15  thing, but the most significant part is the amount of

16  financial loss.  So you understand that other conduct

17  relevant to the offense, particularly the amount of loss,

18  is a factor that gets considered under the guidelines?

19       THE DEFENDANT:  I understand that's a factor.

20       THE COURT:  Okay.  Now, the fact that you've

21  accepted responsibility by pleading guilty, assuming that

22  there's no reason to deny you credit for accepting

23  responsibility, that's a factor that counts in your favor

24  under the guidelines; do you understand that?

25       THE DEFENDANT:  I do.

1          THE COURT:  Now, your role in the offense gets

2    considered.  If there's more than one person involved in

3    the offense, if you have a leadership role it counts

4    against you, if you have a minor role it might count

5    somewhat in your favor or at least less bodily against

6    you.  And if you did anything to obstruct the

7    investigation of your crime, that's also a factor that's

8    considered under your role in the offense.  So you

9    understand your role in the offense is a factor that gets

10   considered?

11          THE DEFENDANT:  I understand that, Your Honor.

12          THE COURT:  Okay.  Your prior criminal record, if

13   you have one, that gets considered, too; do you understand

14   that?

15          THE DEFENDANT:  I understand that.

16          THE COURT:  And then I just want to make sure you

17   understand the general perspective of the guidelines,

18   which is to consider a broad range of factors about you

19   and your background, your offense, and the impact of your

20   offense on the victims and on society as a whole.  You

21   understand that the perspective is to consider a broad

22   range of factors?

23          THE DEFENDANT:  I do.

24          THE COURT:  All right.  Good.  So let's talk

25   about the process a little bit.  The presentence report

12

1    will be given to me, it will be given to you and your

2    counsel, and it will be given to the government.  If

3    there's anything in that report that you think is

4    incomplete or incorrect or if you think the guidelines

5    aren't calculated right, you can raise objections to the

6    report to me; do you understand that?

7                THE DEFENDANT:  Yes, I do.

8                THE COURT:  The government will have the same

9    opportunity to make objections to the report.  And at your

10   sentencing hearing, I'll rule on any objections and make a

11   final determination about what goes in your presentence

12   report and about what the properly calculated guideline

13   range is.  Do you understand that process?

14               THE DEFENDANT:  I understand that.

15               THE COURT:  Here's the most important thing to

16   take away: you understand that the guidelines are only

17   advisory.  I will consider them, because the law tells me

18   I have to consider them, but I don't have to follow them.

19   I can sentence you to a penalty that's either greater than

20   or less than what the guidelines recommend if I think it's

21   appropriate under the law.  Do you understand that the

22   guidelines are advisory?

23               THE DEFENDANT:  I do, Your Honor.

24               THE COURT:  All right.  Good.  Now, by pleading

25   guilty today, you are going to give up some constitutional

1  rights that anyone who's accused of a crime has and I want

2  to review some of those with you.  So you understand you

3  have the right to have your guilt determined by a jury?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  And the jury would have twelve

6  individuals on it and they would have to all unanimously

7  find you guilty beyond a reasonable doubt before you could

8  be convicted; do you understand that?

9           THE DEFENDANT:  I do, Your Honor.

10          THE COURT:  You understood, too, that you and

11  Mr. Van Wagner would be able to help select the people who

12  served on that jury?

13          THE DEFENDANT:  I do, Your Honor.

14          THE COURT:  And you also understand that under

15  the Constitution of the United States, nobody can be

16  forced to admit that they've committed a crime.  So you

17  have the right to plead not guilty and to stick with that

18  plea throughout this proceeding.  Do you understand you

19  have the right to plead not guilty?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  That right also means that if this

22  case were to go to trial, you would have the right to not

23  testify.  You could remain silent during the trial and I

24  would have to tell the jury that they could not hold that

25  against you in any way.  Do you understand that you have

1    that right?

2         THE DEFENDANT:  I do.

3         THE COURT:  Now, it's also your right, if you

4    were to choose to do so, to testify and you could tell

5    your side of the story.  So you understand that if you so

6    chose, you would have the right to testify?

7         THE DEFENDANT:  Yes, Your Honor.

8         THE COURT:  You'd also have the right to do what

9    we call "confront and cross-examine the government's

10   witnesses."  That means you could confront them here in

11   the courtroom by facing them here and you could also

12   cross-examine them by having Mr. Van Wagner ask them

13   questions.  Do you understand that you have the right to

14   confront and cross-examine the government's witnesses?

15        THE DEFENDANT:  I do.

16        THE COURT:  You would also have the right to call

17   witnesses on your own behalf.  And even if they didn't

18   want to come here to court, you could compel their

19   appearance by means of a subpoena.  Do you understand you

20   have the right to call and compel the attendance of

21   witnesses?

22        THE DEFENDANT:  I do.

23        THE COURT:  All right.  Good.  So I understand

24   this is your first felony conviction; is that right?

25        THE DEFENDANT:  Yes, Your Honor.

15

1          THE COURT:  All right.  A felony conviction has

2    an impact on your rights beyond the scope of this

3    litigation, and so I'm going to review some of the aspects

4    of the way this conviction would affect your civil rights.

5    So you understand under Wisconsin law, while you're

6    serving any term of incarceration or under any form of

7    supervision, you would not have the right to vote; do you

8    understand that?

9          THE DEFENDANT:  I do, Your Honor.

10         THE COURT:  And you would not have the right to

11   serve on a jury or the right to hold any public office; do

12   you understand that?

13         THE DEFENDANT:  I understand that.

14         THE COURT:  Okay.  Now, there's another important

15   right that I want to review with you, and this will be a

16   permanent impairment of your civil right, and that is that

17   you would not have, as a person convicted of a felony, you

18   would not have the right to possess any kind of firearm or

19   even ammunition; do you understand that?

20         THE DEFENDANT:  I do.

21         THE COURT:  And if you did possess a firearm, or

22   even just the ammunition, you could be charged with a new

23   crime for doing that; do you understand that?

24         THE DEFENDANT:  I do, Your Honor.

25         THE COURT:  Okay.  I believe you're a United

1   States citizen, so what I'm about to tell you probably

2   doesn't apply to you, and that is that a felony conviction

3   could affect your residency status or affect your

4   immigration status, which could result in tendencies,

5   including your deportation from the United States.  I want

6   you to be aware of that, but I believe you're a United

7   States citizen.  Isn't that right?

8           THE DEFENDANT:  Yes, I am a United States

9   citizen.

10          THE COURT:  Okay.  I don't think that applies to

11  you, but I want you to be aware of it.  Finally, the last

12  point I want to make to you about your rights is that you

13  have the right to counsel throughout all phases of this

14  proceeding, including counsel appointed at government

15  expense, if that's necessary.  Do you understand you have

16  the right to counsel?

17          THE DEFENDANT:  Yes, I do, Your Honor.

18          THE COURT:  All right.  The next thing we need to

19  do is to make sure that we all understand and agree on the

20  terms of the plea agreement, so I'm going to ask

21  Ms. Duchemin to review the plea agreement.  And when she's

22  done, I'm going to come back to you and Mr. Van Wagner and

23  I'm going to ask you if you agree that's the deal you've

24  made with the government.

25          THE DEFENDANT:  Okay.  Thank you.

1          THE COURT:  Ms. Duchemin.

2          MS. DUCHEMIN:  Thank you, Your Honor.  The

3    complete understanding of the parties is set forth in the

4    signed plea agreement which has been e-filed with the

5    court, as the Court has already referenced.

6          But in summary, paragraph 1 sets forth the

7    defendant's agreement to plead guilty to Count 2 of the

8    superseding indictment and sets forth the maximum

9    penalties for that offense.

10         In paragraph 2 the defendant acknowledges that he's

11   giving up certain rights by pleading guilty.

12         In paragraph 3 the defendant waives his right to

13   appeal any sentence of 24 months or less.

14         In paragraph 4 the defendant acknowledges his

15   understanding that the plea could have immigration-related

16   consequences if he's not a U.S. citizen.

17         In paragraph 5 the United States is agreeing to

18   recommend that the defendant receive the maximum available

19   reduction for acceptance of responsibility, provided that

20   he qualifies for it under the factors set forth in 3E1.1

21   and has not done anything that the United States does not

22   know about that is inconsistent with acceptance of

23   responsibility.  This recommendation is also contingent on

24   the defendant providing a full and truthful accounting of

25   financial information and a required financial statement.

1  The United States can withdraw the recommendation if the

2  defendant does anything between today and sentencing

3  that's inconsistent with acceptance.

4      In paragraph 6 the United States agrees that the

5  guilty plea will completely resolve all possible federal

6  criminal violations that have occurred in the Western

7  District of Wisconsin, provided the conduct relates to the

8  charged conduct and the criminal conduct was known to the

9  United States at the time of the plea agreement.  This

10 agreement is limited to cases where this U.S. Attorney's

11 Office has exclusive decision-making authority.  The

12 United States is also agreeing to dismiss the remaining

13 counts of the superseding indictment at the time of

14 sentencing.

15     In paragraph 7 the defendant agrees to pay

16 restitution, the exact amount of which will be determined

17 by the Court if the parties cannot agree.

18     In paragraph 8 the defendant acknowledges his

19 understanding that he has to provide truthful financial

20 information in connection with the plea and sentencing.

21     In paragraph 9 the United States reserves its rights

22 to make arguments in support of or in opposition to the

23 sentence imposed on appeal.

24     In paragraphs 10 and 11 the defendant acknowledges

25 his understanding that he should not rely on the

possibility of a particular sentence and that the Court is

free to reject any recommendations made by the parties and

sentence him up to the maximum penalties for the offense.

    In paragraph 12 the defendant acknowledges that this

is the only plea agreement in the case and that prior plea

agreements have been rescinded.

    Paragraph 13 contains the requirement that all plea

agreements have to be approved by the U.S. Attorney and I

can represent that this plea has been so approved, as

indicated by my signature.

    THE COURT:  All right.  Very good.

Mr. Van Wagner, I'm going to start with you.  Is that the

agreement you have with the government?

    MR. VAN WAGNER:  Yes, sir.

    THE COURT:  Okay.  There's a reference to prior

plea agreements.  Have all prior plea agreements been

presented to Mr. Sweeney?

    MR. VAN WAGNER:  There was a precharging

agreement at some point that was presented to him and it

did vary in some ways.

    THE COURT:  Okay.  There's no proposed plea

agreement that was made that was not presented to

Mr. Sweeney?

    MR. VAN WAGNER:  This is the one and only plea

agreement, that's correct.

1          THE COURT:  All right.  Very good.  Okay.

2    Mr. Sweeney, same question to you: is that the agreement,

3    as Ms. Duchemin described it, is that consistent with your

4    understanding of the agreement that you have with the

5    government?

6          THE DEFENDANT:  It is, Your Honor.

7          THE COURT:  All right.  Very good.  I just want

8    to go over one point.  I always reiterate this when these

9    come up.  But in paragraph 3 there's a limited waiver of

10   your rights to appeal.  But you understand that you would

11   have a right to appeal your conviction or your sentence

12   under normal circumstances; you understand that that would

13   be a right that you would have?

14         THE DEFENDANT:  I do.

15         THE COURT:  Okay.  But as long as I sentence you

16   to something that's either 24 months or less, you are

17   agreeing that you will waive your right to appeal your

18   conviction or your sentence?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  All right.  Very good.  Okay.

21         MR. VAN WAGNER:  May I interject for the Court's

22   information --

23         THE COURT:  Yes.

24         MR. VAN WAGNER:  -- although I'm sure it's

25   obvious, there is pending litigation.  It does not direct

1  itself to the count that we intend to plead guilty to.

2       THE COURT:  Yes.  This is a civil case involving

3  Mr. Sweeney and some other related conduct that we were

4  talking about?

5       MR. VAN WAGNER:  There was a motion to dismiss of

6  Count 1 and Count 3, but of course the government is

7  agreeing to dismiss those at sentencing.  Again there's a

8  plea and we'll follow it.  So I've explained all of that

9  to Mr. Sweeney as well.  But that will no longer be an

10  issue in the case, much less an issue for appeal.

11       THE COURT:  Okay.  Just so I understand your

12  point, as it relates to the original indictment, you had

13  filed a motion to dismiss Counts 1 and 3.

14       MR. VAN WAGNER:  Correct.

15       THE COURT:  And that has essentially been mooted

16  by the superseding indictment.  And on the basis of this

17  plea agreement in which the government is going to agree,

18  assuming we complete the whole process here and take a

19  plea and sentence Mr. Van Wagner (sic), at the time of

20  sentencing the government is going to dismiss Count 1 and

21  Count 3.

22       MR. VAN WAGNER:  And therefore we have not at

23  this point and do not intend to file a renewed challenge

24  to the counts in the superseding indictment.

25       THE COURT:  Yes.  Right.

1            MS. DUCHEMIN:  So we didn't ask expressly for a

2    waiver as to that issue because it didn't relate to the

3    charge, what he's pleading guilty to.  But it's certainly

4    I think the parties' intention that he's not going to

5    appeal anything related to statute of limitations.

6            THE COURT:  Yes.

7            MR. VAN WAGNER:  That's correct.  I agree with

8    that.

9            THE COURT:  All right.  Very good.  Mr. Sweeney,

10   do you agree with all that?

11           THE DEFENDANT:  I sure do, yes.

12           THE COURT:  Okay.  All right.  So Counts 1 and 3

13   are going to be dismissed, assuming I accept the plea

14   agreement and we get to sentencing.  And so the challenges

15   to those are mooted by the fact that the plea is on Count

16   2 only.  Okay.  All right.

17      Mr. Sweeney, did anyone make any other promises to

18   get you to plead guilty?

19           THE DEFENDANT:  No, Your Honor.

20           THE COURT:  Did anyone threaten or try to force

21   you to plead guilty?

22           THE DEFENDANT:  No, Your Honor.

23           THE COURT:  Okay.  And did anyone tell you that

24   you're going to get some particular sentence in this case?

25           THE DEFENDANT:  No, Your Honor.

23

1          THE COURT:  Okay.  And do you have any -- and I

2    know that you've probably discussed the range of

3    sentencing and the impact of the guidelines and all of

4    that, which is of course a good idea to discuss.  But do

5    you have any reason to think that I will make a certain

6    decision to give you a particular sentence in this case

7    other than the fact that it will be within the statutory

8    maximum of five years?

9          THE DEFENDANT:  I understand that there's no

10   agreement as to sentence.

11         THE COURT:  Okay.  Good.  All right.  And I'm

12   entitled to look at your presentence report and make a

13   fair evaluation.  And regardless of what the guideline

14   says, I can sentence you up to five years; do you

15   understand that?

16         THE DEFENDANT:  Sure.  Yes.

17         THE COURT:  All right.  Now, also, you understand

18   that once I accept your plea, you're not free to withdraw

19   your plea of guilty, even if I don't accept any

20   recommendations that the government says it's going to

21   make; do you understand?

22         THE DEFENDANT:  Yes, I understand that.

23         THE COURT:  And there's not a lot of

24   recommendations in here, but there is a recommendation

25   that the government says that it would make, is that they

1    would recommend that you get maximum credit for acceptance

2    of responsibility.  That's the main recommendation in

3    there.  But you understand I'll consider that

4    recommendation, but I don't have to follow that one

5    either; do you understand?

6              THE DEFENDANT:  Yes, I do understand.

7              THE COURT:  And if I don't follow it, it doesn't

8    give you a basis to withdraw your plea.

9              THE DEFENDANT:  I understand.

10             THE COURT:  All right.  The next thing we have to

11   do is determine that there's a factual basis for the plea.

12   So I'm going to ask Ms. Duchemin to tell me, in summary,

13   what the government would present if the case were to go

14   to trial.  And again when she's done, then I'm going to

15   come back to you and Mr. Van Wagner and ask you to confirm

16   that you agree that the government could prove those

17   things.  Ms. Duchemin.

18             MS. DUCHEMIN:  Your Honor, had the case gone to

19   trial, the United States would have introduced the

20   following evidence, in summary, as it relates to Count 2

21   of the superseding indictment:

22        The United States would have called Michael Casey and

23   Joel Frank.  They would have testified that they were

24   business partners and co-owners with the defendant of

25   three companies: Fairview Ridge, Fairview Ridge II, and

1  Fairview Ridge III.  The defendant was the managing member

2  and had control over the company's bank accounts.

3      Casey and Frank would have testified that in early

4  2007, the defendant approached them about a way for the

5  companies to make money.  The defendant represented that

6  he had a friend and legal client, Mark Gullickson, who

7  needed some money, somewhere between 105,000 and 115,000,

8  to fix up his mother's home prior to sale.  The defendant

9  proposed that the companies loan Gullickson money at an

10  interest rate of 13%.  Casey and Frank agreed.  However,

11  over the next two years, the defendant wrote himself

12  checks totalling more than $420,000 while representing

13  that the checks were loans to Gullickson.

14      When Casey and Frank became concerned that Gullickson

15  had not repaid any money on the loan and that the dollar

16  amount of the loan had gone well beyond the original

17  amount, the defendant told his business partners that

18  Gullickson needed more money, that he had fallen on hard

19  times, and that the defendant was going to guarantee the

20  loan.

21      By 2011, Gullickson was still not paying on the loan

22  and Casey asked to see a copy of the original promissory

23  note.  The defendant emailed a purported promissory note

24  between the companies and Mark Gullickson.  When he

25  received the note, Mr. Casey became concerned that the

1  amount of the note was $600,000 and that Gullickson's

2  signature looked like the handwriting of the defendant.

3       The United States would have called Mark Gullickson,

4  who would have testified that he did not sign the

5  promissory note and never borrowed any money from the

6  Fairview Ridge companies.

7       Through testimony and documentary evidence, the

8  United States would have established that the defendant

9  filed for Chapter 11 bankruptcy protection in the Western

10  District of Wisconsin on February 14, 2013.  The

11  statements in his bankruptcy petition were made under

12  penalty of perjury.  In that document, rather than

13  disclose the true nature of the debt to Fairview Ridge

14  companies, the defendant falsely listed the debt as,

15  quote, "loans to debtor," close quote.

16       During the course of the bankruptcy proceeding the

17  trustee learned of the supposed loan to Mr. Gullickson and

18  conducted a deposition of the defendant about the nature

19  of the Gullickson loan as it related to his debt to the

20  Fairview Ridge entities.  During the deposition the

21  defendant admitted under oath that he obtained

22  unauthorized advances from the Fairview Ridge companies in

23  the form of checks he wrote to himself for his own

24  personal use.  He admitted under oath that his business

25  partners believed the money was being loaned to Mark

1    Gullickson, because that's what he represented to them.

2    And the United States would have introduced an audio of

3    the defendant's admissions.

4         Regarding materiality of the false statement, the

5    U.S. Trustee would have testified that the reason that the

6    nature of the debt is significant in the context of a

7    bankruptcy proceeding is because legitimate debts are

8    often dischargeable in bankruptcy, while debts created by

9    embezzlement or fraud are not dischargeable.

10        In this case the government would have established

11   that the defendant lied on his bankruptcy petition in an

12   effort to deceive the trustee and the bankruptcy court

13   about the nature of his debt to the Fairview Ridge

14   companies and to conceal his prior criminal conduct.

15        We would ask the Court to take judicial notice that

16   the Bankruptcy Code is found in Title 11 of the United

17   States Code.

18             THE COURT:  All right.  Very good.

19   Mr. Van Wagner, I'll start with you.  Can the government

20   prove those things?

21             MR. VAN WAGNER:  Yes, it can.

22             THE COURT:  All right.  Mr. Sweeney, same

23   question to you: can the government prove those things?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  And, Mr. Sweeney, I'm just going to

1  ask you to tell me, in your own words, about the

2  statements you made to the bankruptcy court regarding the

3  nature of the obligation that you had to the Fairview

4  companies, if not to why you did that.

5            MR. VAN WAGNER:  You are referring to the

6  schedules he filed, I presume?

7            THE COURT:  Yes.

8            MR. VAN WAGNER:  Okay.

9            THE DEFENDANT:  I described them and then

10  testified that they were loans.

11            THE COURT:  Okay.  When in fact they were

12  something else?

13            THE DEFENDANT:  When in fact they were as a

14  result of an embezzlement.

15            THE COURT:  Okay.  And so why did you make that

16  misrepresentation to the bankruptcy court?

17            THE DEFENDANT:  I'm not sure, all these years

18  later, but I surmise that I was concerned that they would

19  look something like a legitimate loan, which is how I

20  presented them.

21            THE COURT:  Okay.  And that was for the purpose

22  of having those obligations discharged in the bankruptcy;

23  am I understanding that right?

24            MR. VAN WAGNER:  You can answer that.  Answer it

25  the way you've answered it to me.  May I have a moment?

1           THE COURT:  Yes.

2        (Discussion held off the record between defendant and

3   counsel.)

4           THE DEFENDANT:  I didn't do it for the purpose of

5   discharge, because my filing was a Chapter 11, where I

6   didn't ask the court for any discharge.

7           THE COURT:  Okay.  Well, tell me why then did you

8   not simply describe them as an embezzlement then?

9           THE DEFENDANT:  Because I felt it wasn't in my

10  best interest to present them as that.

11          THE COURT:  Okay.  Because it --

12          THE DEFENDANT:  It would look bad.

13          THE COURT:  It would look bad.

14          MR. VAN WAGNER:  I can help the Court with the

15  fact that the government agrees on.

16          THE COURT:  Okay.

17          MR. VAN WAGNER:  The case was converted

18  involuntarily to a Chapter 7.

19          THE COURT:  Okay.

20          MR. VAN WAGNER:  And I fully understand that, in

21  reviewing the transcripts, the government certainly holds

22  the view that the sincerity of his not seeking discharge

23  could be called into question by lack of any apparent

24  ability to pay.  But as a practical matter, when it was

25  filed as a Chapter 11, the request was to reorganize the

1    debt and it was converted involuntarily later by one of

2    the debtors.

3         THE COURT:  All right.  Here's the issue I'm

4    struggling with here: I'm satisfied that the

5    misrepresentation was made intentionally to the bankruptcy

6    court.  I'm also satisfied that ultimately the

7    misrepresentation was material.  I don't know that it was

8    material at the time the misrepresentation was made, but I

9    don't know that that's really an element of the offense.

10        MR. VAN WAGNER:  Well, I think that we agree that

11   it was, because when he made the representation, it was

12   intended to list it under the category of potentially

13   dischargeable debts.  If the Chapter 11 failed, those who

14   know the bankruptcy laws, and Patrick did at that point,

15   know that Chapter 11's aren't always granted and they

16   can't be converted.

17       So as a practical matter, part of the proffer that

18   the government has offered from the trustee is 100-percent

19   accurate, and that is that it's important for debts to be

20   listed accurately.  Had he listed them as the proceeds of

21   unlawful activity, that would have been the end of the

22   Chapter 11 and it would have also been the end of any

23   effort to reorganize.

24        THE COURT:  All right.  And what I'm trying to do

25   is make sure that Mr. Sweeney acknowledges and admits, in

1   his own words, that he intentionally made a false

2   representation in the bankruptcy court, and I think that

3   that's been established.  But I would also like, in an

4   abundance of caution, to make sure that Mr. Sweeney also

5   admits that he was intentionally making a material

6   misrepresentation in the bankruptcy.

7           THE DEFENDANT:  I believe it was material, as I

8   sit here today, sure.

9           THE COURT:  All right.  Okay.  All right.

10  Ms. Duchemin, are you satisfied that we have an admission

11  that establishes all the elements?

12          MS. DUCHEMIN:  I do.  The statute requires that

13  the defendant made the statement with intent to deceive,

14  and I believe that that's been established.

15          THE COURT:  Okay.  All right.  Very good.

16  Anything else I need to review before I ask Mr. Sweeney

17  what his plea is?

18          MS. DUCHEMIN:  No, Your Honor.

19          THE COURT:  Okay.

20          MR. VAN WAGNER:  No, Your Honor.

21          THE COURT:  Mr. Van Wagner?  Okay.  Good.  All

22  right.  Then I'm going to ask you, Mr. Sweeney, what is

23  your plea to Count 2 of the superseding indictment?

24          THE DEFENDANT:  I plead guilty to Count 2.

25          THE COURT:  All right.  Very good.  On the basis

1  of this discussion with you and your attorney, on the

2  basis of the record in the case as a whole, I'm satisfied

3  that you've entered a plea knowingly and voluntarily, that

4  you've done so after an adequate opportunity to consult

5  with counsel, that you have done so with an understanding

6  both of the nature of the charge and of the consequences

7  of a plea of guilty.  I'm also satisfied that there's a

8  factual basis for the plea.

9       Accordingly, I find and adjudge you guilty of Count 2

10  of the superseding indictment.  I will accept the plea

11  agreement conditionally pending a review of the

12  presentence report.

13       All right.  So we've got two more tasks: one is to

14  set the dates for the sentencing and the disclosures and

15  objection schedule in connection with that, but then also

16  we need to determine Mr. Sweeney's release status.

17           MR. VAN WAGNER:  May we have a discussion on the

18  record about scheduling before you eke out the tentative

19  dates?

20           THE COURT:  By all means.  But let's just deal

21  with the release status.  Ms. Duchemin, is there going to

22  be an objection from the government to Mr. Sweeney's

23  continued release?

24           MS. DUCHEMIN:  No.

25           THE COURT:  Okay.  Then let's just deal with

1    that.   Mr. Sweeney, I'll continue your release pending

2    your sentencing on the same conditions that have governed

3    your conduct prior to the plea agreement.   So you're still

4    bound by those conditions and I will continue your release

5    upon those conditions.   Let's talk about sentencing then.

6              MR. VAN WAGNER:   May it please the Court.   I'm

7    going to at this point, having had a frank and extended

8    conversation with the prosecutor yesterday, as fair as I

9    want to be to the prosecutor, ask if they could state what

10   our agreement is and how we want to approach this and

11   suggest this to the Court.

12             MS. DUCHEMIN:   Your Honor, based on my

13   conversations with Mr. Van Wagner and based on my review

14   of the evidence, I think there's a genuinely complex

15   restitution issue here, because there's some -- there's

16   lots of issues, to put it mildly.   And so I guess

17   Mr. Van Wagner and I would request one of two things,

18   either which I think is fine with both parties --

19             THE COURT:   Okay.

20             MS. DUCHEMIN:   -- one of which is that the Court

21   set a sentencing and then simply just plan ahead that

22   we're going to probably have a separate restitution

23   hearing that we're going to have to take some evidence

24   on --

25             THE COURT:   All right.

1          MS. DUCHEMIN:  -- or if the Court would like to

2     set out sentencing a bit in the hopes that we can come to

3     an agreement.

4        I think Mr. Van Wagner and I are on the same page as

5     to what the issues are.  So at least I think we can

6     negotiate, you know, to the end of trying to come up with

7     a number.  Whether or not we're going to be able to come

8     up with a number without evidence, I don't know.  So one

9     of those procedural mechanisms would I think -- either one

10    would be fine.

11         THE COURT:  How much time do you think you're

12    going to need?

13         MR. VAN WAGNER:  May I make --

14         THE COURT:  I mean, it's appealing to me to be

15    able to do one hearing and we could do the restitution

16    hearing and the sentencing hearing at the same time.  I've

17    been kind of assuming, I'll take the government's

18    imprimatur on this, but I'm kind of assuming that

19    Mr. Sweeney is a candidate for self-surrender, and so I

20    don't know if there's an urgency to get him to begin

21    serving a sentence of incarceration, if that's coming.  I

22    don't know that that's critical.  So if we delay the

23    sentencing, I don't see that there's a whole lot of damage

24    to society or the interests of government.

25         MS. DUCHEMIN:  I concur.

1        THE COURT:  But if that's your perspective, then

2   it seems efficient to the Court do it in one hearing.

3        MR. VAN WAGNER:  And, Your Honor, we -- is it

4   okay if I stand?

5        THE COURT:  Whatever.  Make yourself comfortable.

6        MR. VAN WAGNER:  I'd prefer it.  That's my

7   parochial schooling upbringing.

8        THE COURT:  Yeah.

9        MR. VAN WAGNER:  It would be our suggestion that

10  if the Court sets the second of those two options, which

11  is a longer date for sentencing, the counsel for the

12  government and I have talked about sitting down and

13  identifying what is a very complex picture, and

14  identifying the things we can stipulate to and agree to

15  and avoid testimony on foundationally or factually, and

16  then identify and narrow the issues that remain.

17      I suspect there's still going to be the need for a

18  hearing and it's probably going to involve witnesses and

19  evidence.  And so it would be our suggestion, since a lot

20  of that information may also play into, to a certain

21  extent, the Court's decision on sentencing, it makes sense

22  to have that hearing ahead of time, set the sentencing

23  further down, and set a date for the hearing and give us

24  time, as we said, to work throughout whatever we can.

25        MS. DUCHEMIN:  Or do it on the same day.

1          MR. VAN WAGNER:  Well, or the same day,

2  although --

3          THE COURT:  Switching them doesn't serve the

4  interests and efficiency.  I still have to do two

5  hearings.  But if the same day works, I would just give

6  you enough time to get it together so that we can settle

7  on -- we do one hearing, it's going to be longer than a

8  normal sentencing.

9          MR. VAN WAGNER:  You're right.  And the only

10  thing I think neither of us is able to do today is predict

11  how much time we'll need because of the work I've outlined

12  for you we plan to do in advance.  So I suggest that we

13  pick a day that you have pretty free and start early.

14          THE COURT:  You're making me nervous.  I was

15  thinking a half a day would cover it.

16          MR. VAN WAGNER:  It could be.

17          THE COURT:  All right.  I get it.  You don't know

18  yet what we don't know.  We have the unknown unknowns

19  problem.  And so I'm open to -- I will tell you that under

20  ordinary circumstances, I would hope that we could get the

21  sentencing hearing, with the restitution, done in half a

22  day, even that seems ample to me.  But again I don't know

23  really what all of the issues are.  And my experience is

24  when a sentencing hearing goes for more than four hours,

25  people get kind of tired and it seems to get past the

1   point of diminishing returns on a lot of issues.

2       But we're just trying to answer questions that it

3   would be impossible for us to answer, so tell me how much

4   more time you need.  Let me just tell you: under ordinary

5   circumstances, with the usual schedule, based on what

6   Mr. Stieve has told me, we would be looking at sentencing

7   in the week of October 9th, and so that's the normal

8   trajectory.  That doesn't build in any extra time to deal

9   with the restitution problem.  So what are you thinking:

10  are you thinking another week? are you thinking another

11  month?

12          MR. VAN WAGNER:  May I address that first?

13          THE COURT:  By all means.

14          MR. VAN WAGNER:  I have a homicide trial on the

15  second full week of August -- on the third full week of

16  October that will occupy my time or much of it.

17          THE COURT:  I'm assuming we're going beyond that

18  because you've asked for some more time.

19          MR. VAN WAGNER:  I'm suggesting to the Court that

20  one month would be the minimum amount of time.  But if

21  we're going to sit down and go through and try to achieve

22  stipulations, there's a number of sets of documents that

23  we may not yet be in possession of that may or may not

24  relate.  It's a complicated corporate situation, financial

25  situation.  So I would suggest at least 30 days and

1    somewhere from 30 to 60 after that.

2        THE COURT:  Let's start with 30 days.  If I'm

3    reading between the lines here, you're telling me that

4    there is some documents you need to get and you don't know

5    how long it will take you to get them.  I think within a

6    month -- frankly, you should be able to do your work in a

7    month.  But if you have to wait for documents, maybe I

8    have a little bit of sympathy for that, but 30 days is

9    what I have in mind.

10        MR. VAN WAGNER:  My reference to the homicide

11   trial was to indicate that a good chunk of that month I

12   won't even be available.

13        THE COURT:  Yeah.  So, anyways, I'll give you

14   time after that.  But certainly in the lead-up to your

15   homicide trial, you can take the steps to collect the

16   documents you need.

17        MR. VAN WAGNER:  Absolutely.

18        THE COURT:  So I'm looking at, like, the week of

19   November 13th.  It could be as early as -- the following

20   week is the Thanksgiving week, so let's avoid that.  Let's

21   look at -- how about Friday, the 17th of November?  I'll

22   give the defendant the first crack at that.

23        MR. VAN WAGNER:  Well, Your Honor, that will give

24   me incentive to be speedy, because that's also the day I

25   leave, late in the afternoon, to go to deer camp.

1          THE COURT:  Gives everyone an incentive.

2          MS. DUCHEMIN:  Your Honor --

3          THE COURT:  Yes.

4          MS. DUCHEMIN:  -- is it possible to do it on the

5    16th?

6          THE COURT:  It would.  Let's see.  I've got a --

7    it looks like I have a court trial starting at nine.

8          MS. DUCHEMIN:  Okay.  I can -- I'd prefer not to

9    do the 17th, but I can do the 17th.  So we can leave it

10   the 17th, that's fine.

11         THE COURT:  All right.  Let's do it the 17th.

12   I'm sorry to shoehorn you into the 17th, but --

13         MS. DUCHEMIN:  That's okay.

14         THE COURT:  November 17th, 2017.  We will start

15   at 9 a.m.  I will block out the rest of the day, hoping

16   that the afternoon and the demands of Mr. Van Wagner's

17   travel to his deer camp will give us all an incentive to

18   wrap it up earlier than the end of the day.  Where do you

19   hunt?

20         MR. VAN WAGNER:  Not far enough away.  In the

21   Dells -- well, in the woods outside the Dells.  I don't go

22   to Jellystone Park.

23         THE COURT:  Yeah.  You can get up early and get

24   there Saturday morning before dawn, but you want to get up

25   there and --

1          MR. VAN WAGNER:  I'm the camp cook, so I'll have

2     to be there by midnight.

3          THE COURT:  All right.  Good.  That will be when

4     we do it.  Let's dovetail this back to the needs of the

5     probation office.  So that's extended considerably.  Your

6     original proposal, Mr. Stieve, was that you would have the

7     report available on September 1st.  This gives you a

8     little bit more leeway.

9          So let me take some input from the parties.  When

10    would you like the report?  And of course it probably

11    won't deal with the restitution issues that are the delay.

12    So I want to give Mr. Stieve, since we're moving this out,

13    I'll give him more flexibility to work this into his

14    normal work flow.  So, Mr. Stieve.

15         MR. STIEVE:  Thank you, Your Honor.  I have the

16    standard 35 days disclosure prior to sentencing would take

17    us and put us at on or about October 6th for a disclosure

18    date, objections the 20th.

19         THE COURT:  Okay.  Let me ask you this:  Are

20    there other complications in the sentencing beside the

21    restitution?

22         MS. DUCHEMIN:  There are.  And I was just going

23    to say, so that we're not just, you know, leaving the

24    Court totally in the dark here: one of the issues that is

25    going to come up, I anticipate, is that when the partners

1    discovered the fraud, Mr. Sweeney was pretty quickly

2    thereafter not a part of the business anymore.  And I

3    anticipate that perhaps one of the arguments Mr. Sweeney

4    may try and raise is that his interest in the business,

5    the value of that interest, should be offset against what

6    he embezzled.

7            THE COURT:  Okay.

8            MS. DUCHEMIN:  And there's even another layer of

9    complexity on that because his interest is

10   cross-collateralized as well and was being foreclosed on

11   at the time by the State Bank of Cross Plains, so whether

12   or not at the time of all of this he even owned the

13   interest anymore or what the value of it is.  And frankly,

14   you know, the parties, understandably so, have been

15   focusing on the elements of the offense and not, you know,

16   all these layers of restitution, so that's kind of what we

17   have to deal with.

18       I think that it is going to almost come down to a

19   more conceptual issue than it is going to be is it, you

20   know, $14.21 or is it $10,000, or whatever.  I don't think

21   it's going to be a numbers issue as much as the Court is

22   going to have to decide, are you willing to offset and

23   what does everybody think the relative value of that

24   business interest was at the time.  Does that make sense?

25           THE COURT:  It does, and I appreciate that, which

1   leads to another question.  But it suggests to me that

2   Mr. Stieve's work is not unduly complicated.

3              MS. DUCHEMIN:  Right.

4              THE COURT:  And so the only question I have is

5   whether we should be dealing with the guideline -- by the

6   way, does this affect the loss amount at all?

7              MS. DUCHEMIN:  I don't believe.

8              MR. VAN WAGNER:  No.  The loss or attempted loss

9   remains the same.  It clearly -- I think the prosecutor

10  has very well articulated the principal issues that we

11  have to sort through.

12             THE COURT:  So bottom line is that for the things

13  that Mr. Stieve has to address, the restitution issue does

14  not complicate that --

15             MS. DUCHEMIN:  I agree.

16             THE COURT:  -- and so that can be -- I don't see

17  any reason for it to be done -- this is just kind of my

18  perspective here as well is I don't want to read a long

19  presentence report 30 days before I do a sentencing.  I'll

20  forget it all by then, so I always do that kind of towards

21  the end.  So we might as well address the objections and

22  everything a little bit closer to the actual sentencing

23  hearing, okay, so that's my --

24             MS. DUCHEMIN:  That makes sense.

25             THE COURT:  So the presentence report will be

1    available October 21st and October 20th will be the date

2    for your objections.  Does that work for you?

3              MR. VAN WAGNER:  Say those dates again.

4              THE COURT:  October 6th will be the date the

5    presentence report is available.  That makes your

6    objections due on October 20th.

7              MR. VAN WAGNER:  Yeah.  I thought you, first

8    time, said the 21st.  The 6th and the 20th.

9              THE COURT:  The 6th and the 20th for objections.

10   Okay.  Then on the restitution issue, I guess the bottom

11   line question is are you going to present expert evidence

12   on this as well.  What am I going to have to digest?

13             MS. DUCHEMIN:  That's a very good question.  And

14   admittedly, I'm certainly no business valuation expert

15   myself.  And trying to figure out to what extent his

16   interest was in the process of being taken by the bank is

17   also an issue that we have to try and figure out.  So that

18   the answer is, unfortunately, I don't know.

19             THE COURT:  All right.

20             MR. VAN WAGNER:  I can say probably.

21             THE COURT:  Okay.  I'm not surprised.  Now, the

22   next question is -- this isn't the kind of question that

23   I'm used to answering on the fly at a hearing when you

24   just lay it out for me -- so do you anticipate briefing

25   the issue ahead of time?

1          MR. VAN WAGNER:  I would say we anticipate

2     outlining it.  While it's conceptual, I'm not sure it's a

3     legal issue.  As much as it is a, as the prosecutor says,

4     conceptual issue, that depends upon the various things

5     that the prosecutor said.

6          But I think it would be extremely helpful that the

7     Court had from us, either by stipulation or by competing

8     statements of the financial picture, what we believe is

9     there to look at in the context of the overarching

10    question, and that is the value of Mr. Sweeney's corporate

11    ownership -- what it was is obviously a complicated

12    issue -- but then also whether any of that is an offset to

13    a restitution.

14          THE COURT:  Right.

15          MR. VAN WAGNER:  In short, there's never been an

16    accounting.  My client technically would have the right to

17    go back in the civil setting and pursue an accounting.

18    What we hope to do is short circuit that and put it before

19    you for purposes of restitution.  So I think summaries

20    would be really helpful for you and outlines.

21          THE COURT:  Also, if I'm going to have an expert

22    presentation, I'd like to be prepared in advance so I can

23    ask questions of the expert that are informed rather than

24    just getting the tutorial in an hour and being asked to

25    decide on that basis.

1           MS. DUCHEMIN:  Right.  What I sort of envisioned,

2    Your Honor, is that the parties submit something which

3    is -- I think you're going to sort of find yourself in one

4    of two conceptual camps.  And so that the parties can

5    submit --

6           THE COURT:  If I understand, the conceptual

7    dilemma here is I offset or I don't offset.

8           MS. DUCHEMIN:  Right.

9           THE COURT:  Okay.

10          MS. DUCHEMIN:  And so I think the parties could

11   help the Court out by essentially laying out: look, if you

12   find at the hearing these facts, this would be the result;

13   if you find these facts, this would be the result; such

14   that then the Court just has to choose the two options and

15   can do so more easily on the fly.

16          THE COURT:  Okay.  Then I would like -- and you

17   tell me if you need a briefing sequence, but what I'm

18   prepared to propose, because it's kind of efficient for

19   the parties, is that you each just give me your side of

20   the equation at the same time a week before the sentencing

21   hearing.

22          MR. VAN WAGNER:  I think that's perfect.

23          MS. DUCHEMIN:  I agree.

24          THE COURT:  Yeah.  Okay.  We don't have to turn

25   it into a patent case.  But if you just give me your

1  submissions a week before, I can digest that and be

2  prepared for the hearing.

3            MS. DUCHEMIN:  Very good.

4            THE COURT:  In connection with that, would you

5  also then indicate what you intend to present to me at the

6  hearing, so I know what witnesses to expect then?

7            MS. DUCHEMIN:  Yes.  And we'll try and give the

8  Court a better sense of how long we would anticipate any

9  individual witness would testify --

10            THE COURT:  Okay.

11            MS. DUCHEMIN:  -- for the Court's calendar.

12            THE COURT:  Good.  And none of this forecloses

13  you reaching agreement on as many things you reach

14  agreement on, so hopefully you can use this time for that

15  as well.

16       Can you also, by that same week deadline, give me

17  everything else that you want me to consider in connection

18  with the sentencing, so you want to do a sentencing memo,

19  so I can dig in one time?  Anything else you want --

20  letters in support, sentencing memoranda -- if I get those

21  a week in advance, that would -- I'll have the whole

22  package for me in advance of the hearing a week before.

23            MR. VAN WAGNER:  Yes.

24            THE COURT:  Okay.

25            MR. VAN WAGNER:  In my last sentencing before

1  you, I didn't receive letters until two days before, which

2  is why they came --

3          THE COURT:  And ordinarily I'm fine.  Two days

4  before is about when I prepare for a sentencing.  So no

5  need to, you know, rush you ahead of when I'm really

6  working on it, so that's why the two-day rule is usually

7  what I follow.  This one is more complicated.

8      And I do find it useful when I have some recognizable

9  difficulty in a sentencing.  Here it's restitution, but

10  sometimes there's a guideline issue.  Sometimes it's just

11  better for me to be able to have that in advance and get

12  the parties' positions on it.  Sometimes even an advance

13  ruling on an issue is useful for the sentencing

14  presentations.

15      But in this case, what I think really makes sense is

16  what we've booked out: give you time to work on

17  restitution so we can do one hearing and try to work it

18  all out and resolve it in one gulp, even if it's a long

19  gulp.

20      Those are all my concerns.  Is there anything else we

21  need to address today?

22          MS. DUCHEMIN:  No, Your Honor.

23          MR. VAN WAGNER:  Not from the defense.

24          THE COURT:  All right.  Very good.  We'll hear

25  from you in a few weeks and then see you shortly of that.

1        (Adjourned at 1:51 p.m.)

2                              ***

3        I, CHERYL A. SEEMAN, Certified Realtime and Merit

4   Reporter, in and for the State of Wisconsin, certify that

5   the foregoing is a true and accurate record of the

6   proceedings held on the 21st day of July, 2017, before

7   the Honorable James D. Peterson, Chief Judge of the

8   Western District of Wisconsin, in my presence and reduced

9   to writing in accordance with my stenographic notes made

10  at said time and place.

11  Dated this 12th day of August, 2017.

12

13

14

15

16                         _____/s/_____

17                         Cheryl A. Seeman, RMR, CRR
                           Federal Court Reporter
18

19

20

21

22

23

24  The foregoing certification of this transcript does not
    apply to any reproduction of the same by any means unless
    under the direct control and/or direction of the
25  certifying reporter.